[No. A086366. First Dist., Div. Three. July 18, 2000.]

RICHARD J. ROSASCO, Plaintiff and Appellant, v.
COMMISSION ON JUDICIAL PERFORMANCE, Defendant and
Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

316

**COUNSEL**

Law Office of Stephen A. Holmes, Stephen A. Holmes; and Douglas Melvin Gee for Plaintiff and Appellant.

Richard G. R. Schnickele and Kathryn Doi for Defendant and Respondent.

**OPINION** .

**McGUINESS, P. J.**—This appeal challenges the sustaining of a demurrer without leave to amend to a petition for writ of mandate seeking to compel

the Commission on Judicial Performance (the Commission) to open an investigation under article VI, section 18 of the California Constitution[1] into allegations against a former superior court judge who retired in January 1993. Appellant Richard J. Rosasco, petitioner below, contends the trial court erred in construing the relevant constitutional provision, adopted as Proposition 190 in an election by the voters of the State of California effective March 1, 1995, as not applying retroactively to authorize the Commission to investigate any judge who retired prior to that effective date. We conclude as a matter of law that the applicable constitutional provision does not apply to judges who retired before its effective date. We therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying dispute giving rise to this proceeding concerns allegations of malpractice, fraud and violation of fiduciary duty in the preparation of testamentary instruments for and representation of different members of appellant's family between 1949 and 1967 by retired Superior Court Judge James R. Hardin, at that time an attorney in private practice; and Judge Hardin's subsequent alleged perjury, obstruction of justice and willful misconduct while in office and under subpoena in connection with lawsuits arising from the underlying testamentary and contractual disputes. On November 13, 1997, Rosasco sent a lengthy letter of complaint to the Honorable William G. Polley, the presiding magistrate of the Tuolumne County Superior Court, setting out detailed allegations of misconduct on the part of Judge Hardin, all occurring before his retirement on January 4, 1993. A copy of this letter was forwarded to the Commission. On December 9, 1997, the Commission notified Rosasco by letter that it did not have jurisdiction or authority to initiate an investigation of a retired judge.

On January 5 and 18, 1998, Rosasco's attorney and Rosasco himself, respectively, sent letters to the Commission again requesting that it initiate an investigation into Rosasco's allegations against Judge Hardin. These letters pointed out that under article VI, section 18, subdivision (d), the Commission now has authority to initiate investigations into allegations against a former judge. On February 2, 1998, the Commission responded by letter explaining that it had only possessed the authority to investigate and censure a former judge since the amendment of article VI, section 18 by the voters as of March 1, 1995. Prior to that, no such jurisdiction or authority existed for disciplining retired judges. On this basis, the Commission took

---

[1]For convenience, all further references to articles and sections are to the California Constitution, unless otherwise indicated.

the position that the current version of article VI, section 18, only permits the Commission to consider complaints about the conduct of former judges who retired on or after March 1, 1995, the effective date of the constitutional amendment. Because Rosasco's complaints made allegations against a judge who had retired on January 4, 1993, well before the effective date of the current constitutional provision, the Commission stated it "was unable to consider them."

Rosasco filed a petition for writ of mandate asking the San Francisco Superior Court to compel the Commission to conduct an investigation of Judge Hardin, or show cause why it need not. On October 9, 1998, the superior court issued and served on the Commission and Judge Hardin an alternative writ of mandate. After a stipulated continuance, the Commission filed a demurrer, answer and points and authorities, arguing that the changes to article VI, section 18 allowing the Commission to investigate former judges could not, as a matter of law, be applied to any judge who retired before March 1, 1995, the effective date of the changes. Following a hearing, the superior court sustained the Commission's demurrer to the petition without leave to amend, on the ground that "the section of Proposition 190, which amended article VI, section 18, subsection (d) of the California Constitution, effective March 1, 1995, to provide Respondent [the Commission] authority to investigate retired judges, does not apply retroactively to authorize the Commission on Judicial Performance to investigate a judge who retired prior to March 1, 1995."

## II. JURISDICTION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. THE CHANGE TO THE CONSTITUTION APPLIES PROSPECTIVELY ONLY

 The sole issue on this appeal is whether the relevant provisions of article VI, section 18 apply retroactively to members of the state judiciary who retired before the March 1, 1995, operative date of the voter-approved amendments to section 18, subdivision (d), which extended the Commission's jurisdiction equally to former judges. As both parties acknowledge, this issue is one of interpretation, and is therefore a legal question subject to de novo review on this appeal. (*Quackenbush v. Mission Ins. Co.* (1997) 46 Cal.App.4th 458, 466 [54 Cal.Rptr.2d 112]; *People ex rel. Fund American Companies v. California Ins. Co.* (1974) 43 Cal.App.3d 423, 431 [117 Cal.Rptr. 623]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 316, pp. 354-355.) The question appears to be one of first impression.

*See footnote, *ante*, page 315.

The Commission was originally established in 1960. Since then, its composition and authority have evolved through a series of constitutional amendments approved by the California voters. (*Adams v. Commission on Judicial Performance* (1994) 8 Cal.4th 630, 637-638 [34 Cal.Rptr.2d 641, 882 P.2d 358].) The Commission's jurisdiction is set out in article VI, section 18. Prior to March 1, 1995, that provision contained no language allowing the Commission to initiate an investigation into an allegation made against a retired judge. The Commission's decisions concerning judges, other than private admonishments, were merely *recommendations* made to the California Supreme Court to censure or remove sitting judges, which recommendations the Supreme Court could then act on or not, at its own discretion. At that time, the Commission was composed of five judges, two attorneys, and two citizens who were neither judges, retired judges, nor attorneys. (Art. VI, former §§ 8, 18, adopted Nov. 8, 1966; amended Nov. 5, 1974; Nov. 2, 1976; Nov. 8, 1988.)

In 1994, the voters passed Proposition 190, which substantially changed the authority and composition of the Commission. Among other things, Proposition 190 amended article VI, section 18 to specify that the Commission had jurisdiction to investigate, publicly admonish, censure, or sanction former judges by barring them from receiving future assignments, appointments, or references from any California state court, with *discretionary* review by the Supreme Court.[2] As the ballot pamphlet for Proposition 190 noted, the proposition expanded the Commission's jurisdiction to include former judges, and amended article VI, section 8 to change the Commission's composition to three judges, two attorneys, and *six* citizens who are neither judges nor lawyers. On the other hand, both Proposition 190 and the ballot pamphlet were silent on the question of whether the expansion of the

---

[2]Since the amendment of article VI, section 18, subdivision (d) effective March 1, 1995, that provision now reads in pertinent part: "Except as provided in subdivision (f), the Commission on Judicial Performance may (1) retire a judge for disability that seriously interferes with the performance of the judge's duties and is or is likely to become permanent, or (2) censure a judge *or former judge* or remove a judge for action occurring not more than 6 years prior to the commencement of the judge's current term *or of the former judge's last term* that constitutes willful misconduct in office, persistent failure or inability to perform the judge's duties, habitual intemperance in the use of intoxicants or drugs, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute, or (3) *publicly* or privately admonish a judge *or former judge* found to have engaged in an improper action or dereliction of duty. *The commission may also bar a former judge who has been censured from receiving an assignment, appointment, or reference of work from any California state court.* Upon petition by the judge *or former judge,* the Supreme Court *may, in its discretion,* grant review of a determination by the commission to retire, remove, censure, admonish, or disqualify pursuant to subdivision (b) a judge *or former judge.* . . ." (Italics added.) Prior to March 1, 1995, the pertinent provision of article VI, section 18 was substantially identical, with the exception of the italicized portions.

Commission's jurisdiction to include retired former judges was intended to be retroactive.

As Rosasco concedes, the Commission had no jurisdiction to investigate retired former judges prior to the effective date of Proposition 190. Consequently, between the time Judge Hardin retired in January 1993 and March 1, 1995, the Commission necessarily had no authority to investigate or sanction him. Thus, Rosasco is seeking retroactive application of Proposition 190, in order to compel the Commission to assert its jurisdiction over retired judges who were not subject thereto from the date of their retirement until Proposition 190 became effective. The difficulty with Rosasco's position is that (1) it is contrary to the general rule that, in the absence of an express provision making it retroactive, any change of law is *presumptively prospective* in application; and (2) there is nothing in the record demonstrating any legislative intention that would defeat this presumption, and render the change in the Commission's jurisdiction enacted by Proposition 190 retroactive rather than prospective only.

▪ The general rule, both in California and in the United States, is that absent some clear indication to the contrary, any change in the law is presumed to have prospective application only. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student. [Citations.] This Court has often pointed out: '[T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past. . . . The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." ' [Citations.]" (*United States v. Security Industrial Bank* (1982) 459 U.S. 70, 79 [103 S.Ct. 407, 413, 74 L.Ed.2d 235]; see also *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*).)

This well-established principle of law was firmly restated by our Supreme Court in *Evangelatos, supra,* 44 Cal.3d 1188. Like the instant case, *Evangelatos* concerned the retroactive application of a voter-approved proposition. The Supreme Court held that Proposition 51, which limited an individual joint tortfeasor's liability for noneconomic damages, could not be retroactively applied to a cause of action that accrued prior to the passage of the proposition. As the court stated: "California continues to adhere to the time-honored principle, codified by the Legislature in Civil Code section 3 and similar provisions, that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from

extrinsic sources that the Legislature or the voters must have intended a retroactive application." (*Evangelatos, supra,* at pp. 1208-1209.) On this basis, the court reaffirmed the fundamental principle that there is a "presumption of prospectivity" applicable to every new legislative enactment "in the absence of a clear legislative intent to the contrary . . . ." (*Id.* at pp. 1193-1194, 1208, 1213-1214; see also *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434]; *People v. Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr. 132, 783 P.2d 719]; *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 827 [258 Cal.Rptr. 161, 771 P.2d 1247].)

Rosasco contends that *Evangelatos* is inapplicable here for a variety of reasons, all having to do with the nature of the ballot measure at issue there.[3] Rosasco asserts that *Evangelatos* "merely affirms a principle that 'a retroactive operation will not be given to a statute which interferes with antecedent rights.'" Insisting that Judge Hardin had no "antecedent rights" with which a Commission investigation could interfere, Rosasco argues that Proposition 190 only changed the jurisdiction of the Commission by extending it to the misconduct of all retired judges, without changing the legal consequences of such misconduct. In other words, Rosasco argues, the amendment did not make previously innocent conduct culpable; instead, it simply gave the Commission power to investigate and discipline judges who had previously escaped such consequences for their offenses by retiring. Urging that no one has a "right" to escape investigation, censure or admonishment for prior misconduct, he insists the amendment to Proposition 190 should be interpreted as giving the Commission power to investigate misconduct as culpable now as it was before the change in the Constitution.

Rosasco's argument misses the mark. The presumption of prospectivity does not depend on the existence of some sort of vested property or civil right which would be threatened by a retrospective application of a change in the law. The fact *Evangelatos* concerned a different set of facts and a nonconstitutional ballot measure dealing with tort damages is not controlling. As is clear from the broad sweep of the Supreme Court's opinion, *Evangelatos* is not limited to its facts or the particular kind of ballot measure

---

[3]Thus, Rosasco insists *Evangelatos* "is not on point" because the ballot measure with which that case was concerned (1) had nothing to do with conferring jurisdiction on an administrative agency; (2) "had nothing to do with protecting the interests of the people in maintaining respect for the judiciary"; (3) was not a statute of limitations provision; (4) created new rights for certain individuals (joint tortfeasors liable for noneconomic damages) and reduced rights for others (plaintiffs in such tort actions); (5) was a statutory provision, not a constitutional one; and (6) changed antecedent property rights.

before the court in that case. The principle it states—" 'legislative enactments are generally presumed to operate prospectively and not retroactively unless the Legislature expresses a different intention' "—is equally applicable to *any* kind of change in the law. (*Evangelatos, supra,* 44 Cal.3d at p. 1208.)

Moreover, " '[t]he retroactive application of a statute is one that affects rights, obligations or conditions that existed before the time of the statute's enactment, giving them an effect different from that which they had under the previously existing law. [Citations.]' In other words, retroactive application of a recently enacted law applies 'the new law of today to the conduct of yesterday.' [Citation.]" (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 469, fn. 5 [78 Cal.Rptr.2d 110].) Thus, the issue is not whether a retired judge has a "right" to escape admonition or censure for past misconduct. The critical question is whether a change in the law can be applied retrospectively to create a substantive change in the *legal circumstances* in which an individual has already placed himself in direct and reasonable *reliance* on the previously existing state of the law.

In this instance, at the time Judge Hardin retired, his retirement terminated the Commission's jurisdiction to initiate an investigation against him. The Commission could have investigated Judge Hardin's alleged misconduct when it occurred or thereafter, as long as he was a judge. When he retired in 1993, however, his exposure to such an investigation ended as a matter of law. Proposition 190 made a large number of changes in the Commission's jurisdiction, composition and procedures that Judge Hardin could not have anticipated in January 1993.[4] Rosasco now seeks to apply the new law, giving the Commission authority to investigate retired judges, to Judge Hardin's "conduct of yesterday"—his decision to retire at a time retirement terminated the Commission's authority to commence an investigation. The present application of article VI, section 18 to Rosasco's allegations against Judge Hardin would obviously upset his reasonable reliance on the legal principles current at the time of his retirement. Indeed, adoption of Rosasco's interpretation of article VI, section 18, subdivision (d) would require the Commission to open an investigation into charges against *any* judge who retired before March 1, 1995, regardless of how many years before 1995 he or she retired, as long as the alleged misconduct occurred within six years prior to the judge's retirement. Whatever one might think of

---

[4]For example, aside from granting the Commission authority to investigate retired judges, Proposition 190 expanded the Commission's authority to impose discipline, radically changed its composition by making a majority of its members laypersons, and opened its formal proceedings to the public. (Art. VI, §§ 8, 18.) None of these changes could have been anticipated in January 1993.

the wisdom of this result, under California law it would clearly represent a *retroactive* application of Proposition 190.

The Supreme Court in *Evangelatos* expressly did not pass judgment on the nature of the "antecedent rights" whose existence bars a retrospective application of a change in law. Instead, as the court explained, the significant factor is the unanticipated consequences that "are frequently triggered by the application of a new, 'improved' legal principle *retroactively to circumstances in which individuals may have already taken action in reasonable reliance on the previously existing state of the law*. Thus, the fact that the electorate chose to adopt a new remedial rule for the future does not necessarily demonstrate an intent to apply the new rule retroactively to defeat the reasonable expectations of those who have changed their positions in reliance on the old law. *The presumption of prospectivity assures that reasonable reliance on current legal principles will not be defeated in the absence of a clear indication of a legislative intent to override such reliance*." (*Evangelatos, supra,* 44 Cal.3d at pp. 1213-1214, italics added.)[5] Even though passage of Proposition 190 had no effect on the "culpability" of a retired judge's actions while in office, it clearly had an effect on the "current legal principles" on which Judge Hardin relied in retiring when he did, which at that time provided that the Commission's jurisdiction to investigate a judge ended when the judge retired.

Initiative measures are subject to the same rules and canons of statutory construction as ordinary legislative enactments. As in *Evangelatos*, in the present instance there is nothing to suggest that the electorate considered these potential "unanticipated consequences," or intended to depart from the general rule that changes in the law operate prospectively and not retroactively. Neither in that case nor in this was any express provision for retroactive application included in the ballot measure; nor was any indication of potential retroactive application suggested in the ballot pamphlet in either instance. For this reason, we must presume that "informed members of the electorate" who happened to consider the issue of retroactivity would have concluded that Proposition 190—like other legislative enactments—would be applied prospectively only. (*Evangelatos, supra,* 44 Cal.3d at pp. 1212-1213.)

Rosasco argues that neither the state nor the federal Constitution would *prohibit* a retroactive application of Proposition 190. The contention is a non

---

[5]The court added: "[T]he well-established presumption that statutes apply prospectively in the absence of a clearly expressed contrary intent gives recognition to the fact that retroactive application of a statute often entails the kind of unanticipated consequences we have discussed, and ensures that courts do not assume that the Legislature or the electorate intended such consequences unless such intent clearly appears." (*Evangelatos, supra,* 44 Cal.3d at p. 1218.)

sequitur. The issue is whether the amendment to article VI, section 18 was *intended* to have a retroactive application. This is a pure question of statutory interpretation to be made by the court. If, as a matter of statutory interpretation, the court concludes that no retroactive application was intended and the provision is prospective only, no constitutional question is presented. (*Evangelatos, supra,* 44 Cal.3d at p. 1206.) Because there has been no showing that Proposition 190 was intended to be applied retroactively, the fact such an application would not have been unconstitutional is simply immaterial.

There is no more merit to Rosasco's assertion that Proposition 190 must be applied retroactively to his allegations against Judge Hardin because it would only mark a "procedural" change in a law applicable to the future investigation of past misconduct. Once again, the Supreme Court specifically rejected this approach in *Evangelatos.* "[R]etroactive application cannot be supported by characterizing [a legislative or constitutional change] as merely a 'procedural' statute. . . . 'In truth, the distinction relates not so much to the form of the statute as to its effects. If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears.' " (*Evangelatos, supra,* 44 Cal.3d at pp. 1225-1226, fn. 26.)

In this case, the fact that Proposition 190 had no effect on the nature or the kinds of *substantive conduct* that could result in a judge being censured or admonished, and that the same misconduct could presumably have resulted in investigation of a sitting judge under the former law, is not controlling. The question rather is whether the "procedural" changes made in the law have the substantial impact of changing the legal effects of past events, with unanticipated consequences on existing circumstances, rights, or reasonable expectations. If so, the law must be construed to operate prospectively only unless a legislative intent to the contrary clearly appears. (*Evangelatos, supra,* 44 Cal.3d at pp. 1225-1226, fn. 26.)

At the time of his retirement in 1993, Judge Hardin had *no notice* that Proposition 190 would expose him to subsequent charges of misconduct. To the contrary, he reasonably relied on then existing law to the effect that his retirement would *terminate* his exposure to investigation by the Commission. This was not only his expectation; as Rosasco concedes, it was a well-settled expectation shared by all. What Rosasco seeks to do in this case is to *change the legal consequences* of Judge Hardin's retirement in 1993, in such a way

that a constitutional amendment that did not become effective until two years later would now expose him *for the first time* to an investigation by the Commission. By the same token, Rosasco concededly had recourse to the Commission *prior* to Judge Hardin's retirement in 1993. It is not clear why Rosasco waited until 1997 to contact the Commission. In short, although Rosasco could have pursued a Commission investigation of Judge Hardin prior to the latter's retirement, he chose not to do so. Instead, he now seeks to apply a changed law to previous circumstances, with substantive legal consequences in the present to Judge Hardin.

Because application of Proposition 190 to Judge Hardin at this time would necessarily change the legal effect of his January 1993 resignation, it must be interpreted as having a substantial retroactive effect on his *existing* rights. We therefore conclude that the presumption of prospectivity does apply to article VI, section 18. Rosasco consequently has the burden of overcoming this presumption by offering some evidence that the drafters of Proposition 190 and the voters who enacted it *intended* the retrospective application for which he argues. He has failed to bear this burden.

There is nothing in the record demonstrating in any way that Proposition 190 is, or should be, exempt from the general rule against retrospective application. As seen, there is no indication of any sort in the language of the new law itself or the ballot arguments in its favor that it was intended to be applied retroactively. Rosasco does not cite any legislative statement in support of his assertion that Proposition 190 was intended to be applied to *all* retired judges, whether they retired prior to the effective date or not. Neither does Rosasco cite any law on point that supports his position. Instead, he refers to *concurring* opinions in *Evangelatos, supra,* 44 Cal.3d at pages 1229-1230 (conc. & dis. opn. of Kaufman, J.) and *United States v. Security Industrial Bank, supra,* 459 U.S. at pages 82-83 [103 S.Ct. at pages 414-415] (Blackmun, J., conc. in judg.), that take issue with the *majority* view expressed in those opinions supporting the presumption of prospective applicability. Such citations are clearly not persuasive, much less dispositive.[6]

---

[6]At oral argument, counsel for Rosasco argued that unless Proposition 190 is applied to former judges who, like Judge Hardin, happened to have retired prior to the effective date of the constitutional amendment on March 1, 1995, the intent of the law to protect the public from unfit judges would be thwarted whenever such a retired judge might be appointed to serve in the assigned judges program as a temporary judge or referee. Any concern in this regard should be alleviated by the fact that the Code of Judicial Ethics specifically applies to retired judges serving in these special assigned capacities. (Cal. Code Jud. Ethics, canon 6.)

In sum, under California law there is a presumption that Proposition 190 is to be applied prospectively in all cases. Rosasco bore the burden of overcoming that presumption by presenting evidence that the change in the Constitution defining the Commission's jurisdiction over retired judges was intended to be applied retroactively. He has failed to do so. Accordingly, as a matter of law and in the interests of considerations of fairness and predictability, we conclude that article VI, section 18, subdivision (d) does not apply retroactively to judges who retired before March 1, 1995, the effective date of Proposition 190.

## IV. DISPOSITION

The order sustaining the demurrer without leave to amend is modified by adding thereto the following sentence: "The alternative writ is discharged, and the petition for writ of mandate is dismissed." As such, the order is affirmed.

Parrilli, J., and Walker, J., concurred.

On August 7, 2000, the opinion was modified to read as printed above.