853 So.2d 85 (2003)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Jane A. PERDUE.
No. 2002-JP-01430-SCT.
Supreme Court of Mississippi.
August 21, 2003.
*86 Luther T. Brantley, III, Patricia A. Hancock, Jackson, for appellant.
Christopher A. Tabb, Brandon, for appellee.
*87 EN BANC.
CARLSON, Justice, for the Court.
¶ 1. The Mississippi Commission on Judicial Performance (Commission) has recommended that Rankin County Youth Court Referee and City of Pearl Youth Court Judge Jane A. Perdue be suspended for thirty days from all judicial functions, including the use of judicial facilities and office, without pay, and assessed costs of $888.22. While we adopt the Commission's recommendation, we do so only after meticulous consideration of the record before us, and the applicable law, as well as the ramifications of our decision today.

PROCEEDINGS BEFORE THE COMMISSION
¶ 2. All proceedings before the Commission were appropriately conducted in accordance with the Rules of the Mississippi Commission on Judicial Performance. After a Formal Complaint was filed against Judge Perdue on December 11, 2001, she filed a sworn answer to this complaint on January 23, 2002. In due course, the Commission designated a three-member committee (Committee) to conduct a formal hearing, and this hearing was held before the Committee on June 19, 2002, at which time the Commission offered three witnesses and Judge Perdue offered two witnesses. Judge Perdue was represented by counsel, and she testified in both the Commission's case-in-chief as well as in her case-in-chief. On July 31, 2002, the Committee filed its detailed nine-page Findings of Fact, Conclusions of Law and Recommendations, wherein the Committee found and recommended, inter alia:
[T]he Committee concludes that the aforementioned conduct of [Judge Perdue] has violated Section 177A of the Mississippi Constitution of 1890, as amended, and said conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
* * *
Having considered the foregoing Findings of Fact and Conclusions of Law, and having considered that Respondent has not been subject to any prior disciplinary proceedings before this body, the Committee recommends to the [Commission] that the Commission recommend to the Supreme Court of the State of Mississippi that Jane A. Perdue, be:
a. Publically reprimanded;
b. Fined in the sum of $500.00; and
c. Assessed cost of this proceeding in the sum of $888.22.
¶ 3. Pursuant to Commission Rule 8E, Judge Perdue, on August 11, 2002, filed a written response and objections to the Committee's Findings of Fact, Conclusions of Law, and Recommendations. On August 16, 2002, the full Commission considered the record before it and unanimously accepted and adopted the Committee's findings of fact and conclusions of law and further unanimously decided to recommend to this Court that Judge Perdue, inter alia, be suspended for thirty days. Thereafter, on August 27, 2002, the Commission filed with this Court its Findings of Fact and Recommendation consistent with its actions of August 16, 2002. In its findings of fact and recommendation, the Commission adopted in toto the Committee's findings of fact, but contrary to the Committee's recommendation of a public reprimand, the Commission's recommendation was as follows:
Having considered the foregoing Findings of Fact and Conclusions of Law, and having considered that [Judge Perdue] has not been subject to any prior disciplinary proceedings before *88 this body, the [Commission] recommends to the Supreme Court of the State of Mississippi that pursuant to Section 177A of the Mississippi Constitution of 1890, as amended, that Jane A. Perdue be suspended thirty (30) days, from all judicial functions, including the use of judicial facilities and office, without pay, and assessed costs of this proceeding in the amount of $888.22.
¶ 4. These recommendations are now before this Court.

STANDARD OF REVIEW
¶ 5. This Court conducts a de novo review of judicial misconduct proceedings. Miss. Comm'n on Judicial Performance v. Vess, 692 So.2d 80, 83 (Miss. 1997). We are certainly not bound by the Commission's findings and recommendations; however, when the Commission's findings are based on clear and convincing evidence, they are afforded great deference. Miss. Comm'n on Judicial Performance v. Lewis, 801 So.2d 704, 707 (Miss.2001); Miss. Comm'n on Judicial Performance v. Bishop, 761 So.2d 195, 198 (Miss.2000). While giving great deference to the Commission's findings, we are also charged to render independent judgment. In re Collins, 524 So.2d 553, 556 (Miss. 1987). This Court has the sole power to impose sanctions when based on clear and convincing evidence. Miss. Comm'n Judicial Performance v. Fletcher, 686 So.2d 1075, 1078 (Miss.1996); In re Garner, 466 So.2d 884, 885 (Miss.1985).

DISCUSSION
I. WHETHER JUDGE PERDUE'S CONDUCT CONSTITUTES MISCONDUCT IN VIOLATION OF SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED, AND/OR CANONS 1, 2A, 3A(1), 3A(4), AND 3B(1) OF THE CODE OF JUDICIAL CONDUCT.
¶ 6. We will set out the facts as revealed in the record as the need arises in our discussion. We start, however, with the findings of fact of the Commission. Although lengthy, these findings of fact, without doubt based on clear and convincing evidence as revealed in the record, are critical to our determination here today, and are thus set out verbatim:
Respondent, Jane A. Perdue, is now and at all times mentioned in the Formal Complaint was the duly appointed and acting Youth Court Referee for the Youth Court of Rankin County, Mississippi. She also served as the duly appointed and acting Youth Court Judge for the Youth Court of the City of Pearl, Mississippi. Although separate dockets are maintained for the two Youth Courts, hearings for both are conducted in the same location.
Honorable Jason T. Zebert, Attorney at Law, Pearl, Mississippi, was at all times mentioned in the Formal Complaint, the duly appointed and acting Youth Court Prosecutor for the Youth Court for the City of Pearl, Mississippi. As such, Mr. Zebert appears regularly before the Respondent in her capacities as Youth Court Judge and as Youth Court Referee.
On September 29, 1999, the Chancery Court of Rankin County, Mississippi entered, in cause number 43,669, its Final Judgment of Divorce Absolute-Irreconcilable Differences forever severing the bonds of matrimony existing by and between Freddie Lewis Tyner and Kim Tyner. The Judgment incorporated the Child Custody and Property Settlement Agreement of the parties. Pursuant to paragraph number 3 of that Agreement, the parties agreed that primary physical and legal custody of their minor child, *89 Trevor Reid Tyner, born January 22, 1998, would be vested in Mrs. Tyner. Certain specified visitation rights were reserved to Mr. Tyner.
In April or May, 200[1], Mrs. Tyner advised Mr. Tyner that she intended to voluntarily admit herself into a rehabilitation center for alcoholism. She requested that Mr. Tyner assume temporary custody of their minor child pending her discharge, to which Mr. Tyner agreed.
On May 15, 200[1], while Mrs. Tyner was still an inpatient resident at the rehabilitation center, Jason T. Zebert, as private attorney for Mr. Tyner, appeared before Respondent Jane A. Perdue, in her capacity as Youth Court Referee for Rankin County, Mississippi, and presented an Order of Temporary Custody. Even though no evidence, sworn or otherwise, was presented in support thereof, Respondent Perdue signed and executed the Order of Temporary Custody effectively removing custody of the minor child in question from Mrs. Tyner, who had been awarded custody pursuant to the Final Judgment of Divorce Absolute-Irreconcilable Differences entered by the Chancery Court of Rankin County, Mississippi, on September 29, 1999, and awarding custody to Mr. Tyner, "until further Order of this Court." Respondent Perdue acknowledges that this Order of Temporary Custody was entered based entirely and solely upon the representations of Attorney Jason T. Zebert that father, Mr. Tyner, might need to get medical attention for the minor child and could not do so without an Order of the Youth Court. [footnote omitted] Respondent Perdue also acknowledges that she has entered similar Orders on prior occasions based entirely upon the representations and statements of private attorneys, with no evidence being received or taken. No prior notice of this proceeding was afforded the custodial parent, Mrs. Tyner. No formal petition was filed and no formal Petition has ever been filed in this Youth Court action. The Order of Temporary Custody does not comply with the requirements of Section 43-21-301(4). The Order was never filed with the Clerk. The Order was not in the usual form routinely utilized in the Youth Court of Rankin County. Further, a copy of the Order was not forwarded to Mrs. Tyner or her attorney until June 20, 2001. [footnote omitted]
On May 21, 2001, Honorable Jason T. Zebert, as private counsel for Mr. Tyner, filed a modification of custody actions (sic) in the Chancery Court of Rankin County, Mississippi, in cause number 43,669. The matter was set for hearing on August 8, 2001. This summons was served upon Mrs. Tyner while she was still an inpatient resident at the rehabilitation center.
Upon her discharge from the rehabilitation center, Mrs. Tyner requested that Mr. Tyner restore custody of the minor child to her. Upon his refusal to do so, Mrs. Tyner retained the services of Honorable John R. Reeves, Attorney at Law of Jackson, Mississippi.
On June 20, 2001, Honorable John R. Reeves, for and on behalf of his client, Mrs. Tyner, filed request for emergency relief in the Chancery Court of Rankin County, Mississippi, seeking restoration of custody of her minor child pursuant to the provisions of the Final Judgment of Divorce-Irreconcilable Differences entered by that Court on September 29, 1999. An Emergency Hearing was scheduled for June 21, 2001. At approximately 5:30 p.m, on the evening of June 20, 2001, Honorable Jason T. Zebert faxed to Mr. Reeves a copy of the May *90 15, 2001, Order of Temporary Custody executed by Respondent in her capacity as Youth Court Referee for Rankin County, Mississippi. This was the first knowledge either Mrs. Tyner or Mr. Reeves had of the existence of this Order.
On the morning of June 21, 2001, Honorable John R. Reeves attempted to inspect and review the Youth Court file containing the Order of Temporary Custody faxed to him the previous evening by Honorable Jason T. Zebert. Mr. Reeves was advised by the custodian of the Youth Court records that no such file existed. Subsequently on July 13, 2001, Ruby Ponder, Deputy Court Clerk, executed a document introduced as Exhibit 3, page 4, advising that:
"....[N]o record exist (sic) in this Court of any hearing on May 15, 2001 and no record exist (sic) in this Court of a hearing on June 10, 2001, in reference to the above-named minor. Furthermore, there is no formal court file and no Department of Human Services complaint or record in this Court as it may pertain to this minor child."
Upon the hearing of Mrs. Tyner's request for emergency relief, Chancellor John Grant determined that inasmuch as the Youth Court of Rankin County, Mississippi, has apparently assumed jurisdiction of the minor, the action in the Chancery Court should be stayed pending resolution of the Youth Court matter. Thus, because of the entry by Respondent of the Order of Temporary Custody on May 15, 200[1], the Chancery Court could not hear her request for emergency relief.
At the request of Honorable John R. Reeves, as counsel for Mrs. Tyner, a review hearing was held in the Youth Court of Rankin County, Mississippi, on July 10, 2001. At this hearing, Mr. Reeves attempted to discover the basis for entry of the Order of Temporary Custody on May 15, 2001, and to present evidence in support of Mrs. Tyner's request that the Order be set aside. However, Respondent refused to give her reasons for entry of the Order, and thus, the reason the Youth Court had jurisdiction of this matter. She refused to allow Mrs. Tyner to present evidence, and she entered the Order Transferring Jurisdiction to Chancery Court which continued in effect the Order of Temporary Custody entered on May 15, 2001, which had, on it (sic) face, long since expired and was of no further force and effect.
In the case sub judice, Respondent testified that, in her opinion, "A Chancery Court Order always overrides a Youth Court Order," that "Chancery Court always takes precedent over Youth Court," and that Mrs. Tyner would have been given a "full hearing" at this review but for the fact that "it [the issue of custody of the minor child] had been filed in Chancery Court." Further, she testified that the Order of Temporary Custody was continued in effect based strictly and solely on the representations of Jason Zebert to the effect that Mrs. Tyner had just been discharged from rehabilitation and "was not ready for custody," even though she would not allow Mrs. Tyner to present any evidence to the contrary. In addition, Respondent testifies "I do not believe, under the circumstances of this case, I do not believe I have done anything that was wrong." Finally Respondent testified that at the July 10, 2001 hearing, she was unaware that no Petition had been filed in this action and she does not recall Mr. Reeves arguing that no Petition had been filed. In her opinion, Respondent has no administrative responsibilities regarding the entry of *91 Orders and the filing of Petitions in Youth Court.
Subsequently, Respondent recused herself from further hearing in this matter and, on July 26, 2001, Rankin County Youth Court Judge Kent McDaniel conducted a review hearing following which he entered an Order Dismissing Case, a copy of which was introduced as Exhibit 3, page 6.
Approximately two and one-half months after entry of the Order of Temporary Custody and after incurring attorneys fees in excess of $13,000.00, custody of the minor child was restored to Mrs. Tyner.[1]
¶ 7. In sum, the relevant facts of the case before us today are that: (1) Judge Perdue entered an ex parte order, in her capacity as Youth Court Referee for the Rankin County Youth Court, as presented by the City of Pearl Youth Court Prosecutor who regularly appeared before her in her capacity as Youth Court Judge for the City of Pearl, but on this occasion the Prosecutor was representing Mr. Tyner (Lewis) as privately retained counsel; (2) Judge Perdue signed this ex parte order awarding Lewis the temporary custody of the Tyners' minor child without a petition being filed, without notice to Mrs. Tyner (Kim) as the custodial parent, without evidence being taken, and without an official court file ever being established; (3) Judge Perdue, upon having the parties and attorneys before her for a review hearing, refused to explain her reasons for the entry of this order and refused to allow evidence to be offered on behalf of Kim; (4) Judge Perdue, on that same day, continued in effect this same order, thus continuing to deprive Kim of the custody of her daughter, although the prior chancery court order awarding her the primary physical and legal custody of her minor child was still in effect; and, (5) Judge Perdue's actions caused Kim to be deprived of lawful custody of her child, which custody was restored to her only after incurring attorney's fees in excess of $13,000.00.
¶ 8. Without question, Judge Perdue's actions cause us to conclude that in accordance with the provisions of Art. 6, § 177A, Miss. Const., 1890, as amended, we are mandated to sanction Judge Perdue because of willful misconduct in office and conduct prejudicial to the administration of justice which brings her judicial office into disrepute in that she has clearly violated various canons of the Code of Judicial Conduct, statutes, and court rules.
¶ 9. Specifically, the record before us reveals that Judge Perdue violated Canons 1, 2A, 3A(1), 3A(4), and 3B(1) of the Mississippi Code of Judicial Conduct.[2] Canon 1 states:
A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code *92 should be construed and applied to further that objective.
Further, Canon 2 A states:
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Additionally, Canons 3A(1) and 3A(4) state:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law ...
Further, Canon 3B(1) states:
B. Administrative Responsibilities.
(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
¶ 10. We cannot and should not view Judge Perdue's actions in a vacuum. We must decide this case not only based on Judge Perdue's actions of May 15, 2001, when she entered the temporary custody order in favor of Lewis, without notice, but also based on the judge's subsequent actions. The brief order of May 15, 2001, is quoted herein, in its entirety:
CAME ON THIS DAY, for hearing in the above styled and referenced cause, a request for temporary custody of the minor child. The Court after due consideration finds as follows:
1. It is in the interest of the above named minor child to have temporary care, custody and control placed with Lewis Tyner, whose address is 336 Mockingbird Lane, Madison, Mississippi 39110.[3]
IT IS THEREFORE ORDERED AND ADJUDGED, that temporary care, custody and control of the above named minor shall be and is hereby placed with Lewis Tyner until further order of this Court.

(emphasis added). That's it. This order was entered only on attorney Jason Zebert's representations that Lewis "might" need to get medical attention for the minor child, and that since Kim was then unavailable, Lewis could not obtain this medical attention for the child without a youth court order. Additionally, the order stated no basis for jurisdiction and further there was no indication of any appearances, testimony, or evidence taken in the matter. The clerk's office did not have a file, petition, copy of the order, or any other document concerning the matter, and no record was made of the hearing. By the very execution of this order, based on the facts and circumstances surrounding its execution, Judge Perdue likewise violated several statutes as will be discussed below.
¶ 11. At the review hearing of July 10, 2001, when presented with a golden opportunity to right the wrong, Judge Perdue refused to even discuss the circumstances of the execution of the May 15th *93 temporary custody order and likewise refused to allow Kim and her attorney the opportunity to offer evidence in an effort to set aside that order. Instead, Judge Perdue entered the order transferring the case to chancery court thereby keeping in effect the previously executed temporary custody order in favor of Lewis. In fact, not only did Judge Perdue not provide Kim and her attorney an opportunity to be heard, but she also kept the temporary custody order in effect based solely on the representations of Lewis's attorney (Jason Zebert) that Kim had just recently been discharged from alcohol rehabilitation and that thus, she "was not ready for custody." Judge Perdue made this decision on the unsworn testimony of Lewis's lawyer while at the same time refusing to allow Kim and her lawyer the opportunity through sworn testimony to refute the unsworn allegations of Lewis's lawyer. Clearly, Judge Perdue violated Canons 1(A Judge Should Uphold the Integrity and Independence of the Judiciary); 2A (A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities); and 3A(1), 3A(4), 3B(1) (A Judge Should Perform the Duties of His Office Impartially and Diligently-Adjudicative and Administrative Responsibilities).
¶ 12. As already noted, Judge Perdue's actions likewise violated several statutes. Miss.Code Ann. § 43-21-301(4) (Rev.2000), a part of the Youth Court Law, states, in pertinent part:
(4) The judge or his designee may order, orally or in writing, the immediate release of any child in the custody of any person or agency. Custody orders as provided by this chapter and authorizations of temporary custody may be written or oral, but, if oral, reduced to writing as soon as practicable. The written order shall:
(c) Except in cases where the child is alleged to be a delinquent child, state that there is probable cause to believe that (i) reasonable efforts have been made to maintain the child within his own home, but that the circumstances warrant his removal and there is no reasonable alternative to custody; or (ii) the circumstances are of such an emergency nature that no reasonable efforts have been made to maintain the child within his own home, and that there is no reasonable alternative to custody.
(emphasis added).
¶ 13. There is nothing in the record to indicate that there were circumstances of an emergency nature sufficient to warrant the change of custody. The underlying facts indicate that prior to checking herself into the alcohol rehabilitation center, Kim had taken the child to Lewis and requested that he assist Kim's mother in caring for the child while she completed the program. Instead, Lewis offered to "keep him (their child) while you're gone." It is obvious from the record that notwithstanding the divorce, Kim and Lewis had a "good working relationship" when it came to child visitation. Judge Perdue testified that she relied on the representations of Lewis's attorney that there may be a need for medical assistance. The contemplation of medical assistance of a child is insufficient reason for the award of temporary custody, especially in light of Miss.Code Ann. § 41-41-3(1)(b) (Rev.2001), which authorizes the minor's parent to seek medical treatment for the child.
¶ 14. The order provided that the "temporary care, custody and control of the above named minor shall be and is hereby placed with Lewis Tyner until further order of this Court." Since Judge Perdue *94 executed the order in her capacity as Rankin County Youth Court Referee (as opposed to in her capacity as the City of Pearl Youth Court Judge), Miss.Code Ann. § 43-21-111(5) (Rev.2000) is applicable. This statute requires that an order entered by a youth court referee shall be immediately mailed to all parties and their attorneys. Also, as noted by the Commission and as revealed in the record, the order was not in the usual form ordinarily utilized in the Rankin County Youth Court. Again, while Judge Perdue's execution of the order was in violation of the Code of Judicial Conduct and the applicable statutes, we also look to her subsequent actions.
¶ 15. After the entry of the May 15th order and while Kim was still in the rehabilitation center, Lewis had sought modification of custody in the chancery court and a hearing was scheduled for August 8, 2001. After completion of the alcohol rehabilitation program in June, Kim sought to regain custody of the minor child by requesting Lewis to return custody of the child to her. After Lewis refused to return their child to her, Kim sought the services of attorney John R. Reeves, who filed for emergency relief with the chancery court. Upon receipt of the emergency motion, Lewis's attorney, Jason Zebert, faxed Kim's attorney a copy of the order entered by Judge Perdue. This was the first time Kim or her attorney knew that such an order existed. Due to the existence of the youth court order, the chancery court declined to hear the emergency motion.
¶ 16. Reeves's inspection of the youth court records revealed that there was no file, no petition, and no original or copy of the May 15th order. Being aggrieved by this temporary custody order, Kim, through her attorney, requested an evidentiary hearing before Judge Perdue; however, Judge Perdue refused to take testimony or other evidence from Kim or her witnesses. Instead, Judge Perdue continued the order of temporary custody and transferred the matter to chancery court.
¶ 17. On July 26, 2001, Rankin County Youth Court Judge Kent McDaniel, after hearing the matter, issued an order of dismissal. Judge McDaniel's order stated that the provisions of the May 15th order did not provide a basis for youth court jurisdiction; that no petition had been filed; that no guardian ad litem had been appointed; that Kim had not received notice; that even if the order were valid when entered that the order had expired "when the procedural and substantive rules and statutes concerning youth court matters were completely ignored;" and, that there was no basis in law for the transfer of the matter to chancery court. Accordingly, Judge McDaniel restored custody of the child to Kim on July 26, 2001.
¶ 18. Admittedly, the fact that the order was entered at the request of an attorney who regularly practices in Judge Perdue's court in and of itself would not raise a legitimate issue of her independence or bias in favor of Zebert or his client. However, Judge Perdue admitted that she granted the order without a hearing or any testimony and without notice to Kim. When viewed in their totality, certainly Judge Perdue's actions legitimately call into question Judge Perdue's independence or, at least, indicate an appearance of impropriety under Canons 1 and 2. Judge Perdue further testified that it was not her responsibility to ensure that a petition was filed or that the court maintained a file on the matter. Although one may look to Zebert's failure to file the petition and to properly "follow[ ]-up" on the matter, the overall administration of the court falls squarely on the shoulders of Judge Perdue, as contemplated by Canon *95 3B(1). Even a cursory review of the court's records would have revealed that there was no petition filed. Certainly, at the review hearing, the actions of Kim and her attorney more than sufficiently put Judge Perdue on notice that something had gone awry.
¶ 19. The actions of Judge Perdue, including the entry of the initial order and the subsequent transfer of the case to chancery court without notice to Kim and without an opportunity for Kim to be heard, violated the already cited canons and statutes. At the hearing before the committee, Judge Perdue testified she did not remember whether Lewis was in the courtroom when Zebert sought the temporary order on May 15, 2001, but that she did recall he did not appear before her. Kim was not at the hearing when the temporary custody order was presented to Judge Perdue, nor was she provided with a copy of the order after its entry.[4] Additionally, because there was no official court file established and maintained in the youth court matter, it was impossible for any subsequent action to have been legitimately taken in the case. On two separate occasions, Judge Perdue refused to hear from Kim, her attorney, or her witnesses. Although several provisions of the Youth Court Law were ignored or violated, Judge Perdue continues to deny that she did anything wrong. The actions of Judge Perdue constitute willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
II. WHETHER THE MISCONDUCT WARRANTS A THIRTY DAY SUSPENSION AND PAYMENT OF COSTS.
¶ 20. The Commission has recommended that should this Court find that Judge Perdue violated Article 6, § 177A, Miss. Const., 1890, along with various canons of the Code of Judicial Conduct, she should be suspended from all judicial functions, including the use of judicial facilities and office, without pay, for a period of thirty days and assessed with costs of this proceeding in the amount of $888.22. The Commission rejected the Committee's recommendation that Judge Perdue receive a public reprimand, a fine in the amount of $500, and assessed costs in the amount of $888.22.
¶ 21. In Mississippi Commission on Judicial Performance v. Bishop, 761 So.2d 195, 198 (Miss.2000), we set forth mitigating factors we consider when determining appropriate punishment:
(1) The length and character of the judge's public service.
(2) Positive contributions made by the judge to the court and the community.
(3) The lack of prior judicial precedent on the incident in issue.
(4) Commitment to fairness and innovative procedural form on the part of the judge.
(5) The magnitude of the offense.
(6) The number of persons affected.
(7) Whether moral turpitude was involved.
¶ 22. Judge Perdue has served in her capacity as both Youth Court Judge for the City of Pearl and Rankin County Youth Court Referee for eight years and has not been the subject of any previous Commission inquiries. She has practiced *96 law for twenty years and spent a total of thirty years involved with youth court work. The underlying accusations do not involve a charge of moral turpitude. However, Judge Perdue did not respect or comply with the law and she failed to maintain professional competence in the law. Additionally, Judge Perdue failed to discharge her administrative duties and responsibilities.
¶ 23. The findings and recommendations of the Commission align with recent holdings of this Court. In Mississippi Commission on Judicial Performance v. Peyton, 812 So.2d 204 (Miss.2002), Judge Peyton was suspended for 30 days and fined $100 as a result of appointing his daughter as public defender to defend an indigent murder suspect. He then conducted an ex parte bond reduction without notice to the prosecution and set aside a civil judgment sua sponte without giving any reason as to why he did so. Also, Judge Peyton had previously been disciplined by the Commission.
¶ 24. We are convinced from the record that the actions of Judge Perdue were not taken in bad faith. We have held, however, that disciplinary action can be appropriate without evidence of bad faith. Miss. Comm'n on Judicial Performance v. Hartzog, 646 So.2d 1319, 1321-22 (Miss. 1994). Through Judge Perdue's actions, the proper parent was deprived the custody of a minor child for a considerable period of time. Judge Perdue brought the judicial office into disrepute; and therefore, disciplinary action is warranted.
¶ 25. What is especially troublesome is Judge Perdue's failure to acknowledge her wrongdoing, or even that she may have made a mistake. At the hearing before the Committee, Judge Perdue testified that "I do not believe, under the circumstances of this case, I do not believe I have done anything that was wrong." Also troubling is the approach that Judge Perdue takes in her response and brief filed with this Court. She attempts to divert our attention from her actions to Kim's actions:
In April or May 2001 Mrs. Tyner went into Jolimar Treatment Center ("Jolimar") for alcoholism and stayed for 58 days. She had been drinking for 6 months. She was also treated for sexual abuse problems. She went to Jolimar after she appeared at work one morning following a night out drinking. Additionally, she was suspended from work for two days.[5]
This case is not about Kim's actionsit is about Judge Perdue's actions. And when it comes to the imposition of discipline, it is also about how Judge Perdue perceives her actions. The following is an excerpt of Judge Perdue's responses to questions propounded to her by the Commission's counsel at the evidentiary hearing before the Committee:
Q. Was continuing this temporary order correct?
A. Well, that's debatable. I mean, I cannot say yes or no. I don't think any harm was done by continuing it.
Q. You don't think depriving the mother of custody from May the 15th until she could eventually get before [Chancellor] Grant caused any harm?
A. No ma'am. Not when she was the one that brought the child to the father, went into drug and alcohol rehabilitation.[[6]] *97 I do not feel that there was any harm to the child at all.
Q. Do you feel there was any violation of due process or the rights that are provided to a parent being deprived of custody of a child in youth court?
A. No, I do not.
Q. And all this was done on the representation of one attorney?
A. Yes, ma'am.
* * *
Q. So it's just not your responsibility, even when it comes back before you, to ever look at the file and see if everything is there that needs to be?
A. Not under the circumstances of this case. I do not believe I was in any manner whatsoever done anything that was wrong.[7]
In fact, Judge Perdue acknowledged to the Committee that if confronted with similar circumstances again, she would most likely again enter a temporary custody order.
¶ 26. The recommendation of the Commission that Judge Perdue should be suspended from all judicial functions, including the use of judicial facilities and office, without pay, for thirty days and that she be assessed costs of $888.22 is hereby approved and adopted. In adopting the Commission's recommendation as to the imposition of discipline, we are not unmindful of the disconcerting effect today's decision has upon a member of the bar and the judiciary who has devoted a substantial amount of her professional life to caring for our youth. We also emphasize that a very appropriate duty of a judge is the exercise of judicial discretion; therefore, we in no way infer by today's decision that our learned judges are subjecting themselves to judicial performance complaints in exercising judicial discretion, or even when there is a subsequent determination on appellate review that there has been an abuse of judicial discretion. Judicial complaints are not the appropriate vehicle to test a possible abuse of judicial discretion. This case is not about abuse of judicial discretion. This case is about clear violations of our judicial canons and our statutes.
¶ 27. While there may be concern that the very nature of appellate review results in this Court viewing Judge Perdue's actions in the cool light of after-the-fact reflection by way perhaps of second-guessing her judicial actions taken in what she perceived to be an emergency situation, we note that a sitting chancellor presided over the Committee hearing. Additionally when the Commission convened to consider Judge Perdue's case, the Commission meeting was presided over by a sitting circuit judge, and there were also present two sitting county court judges, a sitting chancellor and one other sitting circuit judge. A chancellor made the motion to adopt the Committee's findings of fact, but not to accept the Committee's recommendation for a public reprimand, but instead to recommend to this Court, inter alia, a 30-day suspension. The chancellor's motion was unanimously passed by the Commission. While this Court is the ultimate arbiter of Commission complaints against *98 our judges, we afford deference to the Commission's findings of fact and recommendations when such findings, as here, are supported by clear and convincing evidence; and we also note that in today's case, our learned trial judge-members on both the Committee and the Commission found Judge Perdue's actions to be in violation of our judicial canons and sanctionable.[6]

CONCLUSION
¶ 28. For the reasons herein stated, this Court adopts the Commission's findings that Judge Perdue's behavior constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, in violation of Art. 6, § 177, Miss. Const., 1890, as amended. We likewise adopt the Commission's recommendation and suspend Judge Jane A. Perdue for thirty (30) days from all judicial functions, including the use of judicial facilities and office, without pay, and assess her with the costs of these proceedings in the amount of $888.22.
¶ 29. JUDGE JANE A. PERDUE IS HEREBY SUSPENDED FOR THIRTY (30) DAYS FROM ALL JUDICIAL FUNCTIONS, INCLUDING THE USE OF JUDICIAL FACILITIES AND OFFICE, WITHOUT PAY, AND ASSESSED COSTS OF THESE PROCEEDINGS IN THE AMOUNT OF $888.22.
WALLER AND COBB, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. PITTMAN, C.J., SMITH, P.J., DIAZ AND EASLEY, JJ., NOT PARTICIPATING.
McRAE, Presiding Justice, Dissenting:
¶ 30. The Judicial Performance Commission's recommendation and the holding of the majority which provides for suspension from judicial functions for thirty days without pay and assessment of costs in the amount of $888.22 are not justified. For this reason, I, therefore, dissent.
¶ 31. This Court is not bound by the Commission's findings as we have sole discretion in determining the appropriate discipline for the misconduct so alleged. Miss. Comm'n on Judicial Performance v. Bishop, 761 So.2d 195, 198 (Miss.2000) (citing Miss. Comm'n on Judicial Performance v. Chinn, 611 So.2d 849, 850 (Miss. 1992); Miss. Comm'n on Judicial Performance v. Russell, 691 So.2d 929, 942 (Miss.1997)). When determining the appropriate discipline, we must consider the following mitigating factors:
(1) The length and character of the judge's public service;
(2) Positive contributions made by the judge to the court and the community;
(3) The lack of prior judicial precedent on the incident in issue;
(4) Commitment to fairness and innovative procedural form on the part of the judge;
(5) The magnitude of the offense;
(6) The number of persons affected; and
(7) Whether moral turpitude was involved.
Id. In the end, the sanctions imposed should fit the offense with which the judge is charged. Miss. Comm'n on Judicial Performance v. Hartzog, 646 So.2d 1319, 1322 (Miss.1994) (citing In re Bailey, 541 So.2d 1036, 1040 (Miss.1989)). A lack of *99 improper motive will not preclude discipline, but will be considered as a mitigating factor. Id. (citing Bailey, 541 So.2d at 1040).
¶ 32. With these principles in mind, we have ordered a wide range of discipline depending upon the misconduct alleged. Just a few examples will illustrate why the majority's imposition of a suspension is unwarranted.
¶ 33. In Bailey, we ordered a public reprimand for the misconduct of a Justice Court Judge who committed two separate and unrelated acts of misconduct. 541 So.2d at 1039-40. Judge Bailey, a Justice Court Judge in DeSoto County, "mishandled an eviction and past due rent case ... against Louise Brown .... [and] also interfered or attempted to interfere with a case assigned to another DeSoto County Justice Court Judge by entering an order purporting to grant relief from a temporary protective order previously entered by another judge." Id. at 1039. We found that there was no evidence of malice, personal benefit, or improper motive. Id. at 1039-40. However, we did find that Judge Bailey's "ignorance" would not operate to exonerate him. Id. at 1040 (citing In re William Anderson, 451 So.2d 232, 234 (Miss.1984)).[7] Ultimately, we decided that public reprimand was the appropriate discipline. Id.
¶ 34. In Hartzog, we ordered a public reprimand and assessment of costs for the misconduct of a Justice Court Judge who committed three separate and unrelated acts of misconduct. 646 So.2d at 1320-22. Judge Hartzog, a Justice Court Judge from Jefferson Davis County, mishandled the notarization of a quitclaim deed, signed an order in an unnumbered case that directed a prisoner be returned to the county for a fictitious pending hearing; and executed an instrument for an unnumbered case which authorizing one to remove personal properly. Id. at 1320-21. We found that Judge Hartzog, who had no prior allegations of misconduct, had not acted with malice, bad faith, or personally benefitted from his misconduct. Id. at 1322. We issued a public reprimand and assessed him costs. Id.
¶ 35. In Miss. Judicial Performance Comm'n v. Bishop, we ordered a ninety-day suspension and assessed $1,500 in costs for two counts of misconduct of a Justice Court Judge. 761 So.2d at 196-98. Originally, Judge Bishop was charged with six counts of misconduct which centered around "allegations that Bishop had engaged in sexual relations with a fifteen-year-old minor, that he had intimidated that same minor, and that he had interrogated and intimidated a high school student who had made suggestive remarks to the minor." Id. at 196. A three-member Committee found two of the counts to be supported by the evidence and recommended a ninety-day suspension and assessment of $1,500 in fines and additional costs. Id. After deliberations, the Commission adopted the Committee's findings as to the two counts, but recommended that Bishop by publicly reprimanded, fined $1,500, and assessed costs. Id. The two counts which both the Committee and Commission found to be validated were counts III and V. Id. Count III alleged that "Bishop had conspired with Freddie Varnes, a jailor at the Simpson County Jail and an employee of the Sheriff's department, to `harass and intimidate' the family of the minor who was making the allegations against Judge Bishop ... [by] ... parking his vehicle across from the house of the minor's house in order to intimidate her and her family." Id. Count V alleged that "Bishop had `confronted, interrogated, *100 and intimidated' a male high school student who had made `inappropriate sexual remarks' to the minor female who was the subject of the allegations ... [by] ... interject[ing] himself into a meeting between the male student and the school principal and us[ing] his position as judge to intimidate the student." Id. at 197. Based on the serious nature of the misconduct, we held that the appropriate discipline was a ninety-day suspension from office, a $1,500 fine, and assessment of costs. Id. at 198.
¶ 36. Lastly, in Miss. Comm'n of Judicial Performance v. Peyton, 812 So.2d 204, 205-08 (Miss.2002), we ordered a thirty-day suspension without pay and assessment of costs for three acts of misconduct by a Justice Court Judge. Judge Peyton, a Justice Court Judge from Yazoo County, appointed his daughter Alva Taylor, a Yazoo County Public Defender, to represent a indigent murder suspect who was before his court; initially set a $100,000 bond for a defendant, but without notice to the prosecution lowered the bond amount to $50,000; and set aside a judgment of $2,114 which he had entered just four days earlier. Id. at 205. The Commission recommended a thirty-day suspension without pay and the assessment of costs in the amount of $100. Id. at 206. Judge Peyton had undergone discipline on two previous occasions for improper political activities and ex parte communications with a party involved in pending litigation before him. Id. at 207. We approved of the Commission's findings and ordered a thirty-day suspension without pay and the assessment of costs. Id.
¶ 37. With the applicable law stated and the above cases in mind, it is clear that the appropriate discipline for the misconduct of Judge Perdue, if any, should be a private reprimand. Judge Perdue's acts of alleged misconduct encompass one single transactional event, unlike those of the above mentioned judges. See Peyton, 812 So.2d at 205 (three separate and unrelated acts of misconduct for which suspension and assessment of costs ordered); Bishop, 761 So.2d at 196-97 (two acts of misconduct which amount to "threats and intimidation" for which suspension and fine ordered); Hartzog, 646 So.2d at 1320-21 (three separate and unrelated acts of misconduct for which public reprimand and costs assessed); Bailey, 541 So.2d at 1039 (two separate and unrelated acts of misconduct for which public reprimand ordered). She has never been the subject of discipline. There is no evidence of malice, bad faith, or personal benefit. At worst, her actions can be characterized as interfering with a case or order assigned and issued by another judge. See Bailey, 541 So.2d at 1039. Additionally, mitigating factors weigh in her favor: her character and service as a judge; her positive contributions to the community; her commitment to fairness; and the fact that moral turpitude is not involved. See Bishop, 761 So.2d at 198. She may have been in error in trusting her lawyers. She was right in the subsequent hearing in not deciding it and transferring it to the chancery court. For these reasons, the appropriate discipline, if any, is a private reprimand.
GRAVES, J., JOINS THIS OPINION.
NOTES
[1] As already noted, the Commission adopted in toto the Committee's findings of fact.
[2] By order dated April 4, 2002, this Court adopted a new Code of Judicial Conduct which replaced the former Code. The citations in today's opinion are to the former Code of Judicial Conduct which was in effect on the dates in question. We also remind the reader that our current Code contains gender neutral language wherein the language quoted today from the former Code is not gender-neutral.
[3] Judge Perdue obviously acknowledged in her order that the "petitioner" was not even a resident of Rankin County.
[4] Judge Perdue's assertion that Kim could not be provided with notice or a copy of the temporary custody order because of her being in a treatment facility, and that the youth court was only ratifying through this temporary custody order what Kim had already done by voluntarily relinquishing custody of the child to Lewis while she was at the treatment facility simply does not in any way persuade this Court in the judge's favor.
[5] In her appearance before the Committee, Kim testified that she had no DUIs, that she was not drinking every day, and, that in fact she would consume alcohol only on every other weekend when her child was with Lewis for visitation. Kim's in-patient treatment at Jolimar was not just for an alcohol problem. Kim's testimony on the alcohol issue is unrebutted in the record.
[6] Kim testified at the hearing before the Committee that she did not have a drug problem and did not abuse prescription drugs or use illegal drugs. This testimony is unrebutted in the record.
[7] Because of his inappropriate conduct in the manner in which he secured the temporary custody order from Judge Perdue, Lewis's attorney was sanctioned by Youth Court/County Court Judge Kent McDaniel, who assessed Lewis's attorney $1,702.15 in attorneys fees and expenses due to Kim's attorney under the Litigation Accountability Act of 1988, Miss.Code Ann. §§ 11-55-1 to -15 (Rev.2002).
[6] We also acknowledge the conscientious work of the esteemed lay citizens who serve on the Committee and the Commission.
[7] See also In re Collins, 524 So.2d 553 (Miss. 1987); In re Garner, 466 So.2d 884 (Miss. 1985); In re Lloyd Anderson, 412 So.2d 743 (Miss.1982).