OPINION OF THE COURT — by the
Bar. POWHATTAN ELLIS.
At the September term of the circuit court of Lawrence county, 1822, —on motion of the Attorney Genera], it is ordered, that a rule be entered, requiring Harman M. Runnels, late Register of the Court of Probates for Lawrence county, to shew cause on Friday next, why a manda-mas should not issue, commanding him to restore ihe papers belonging, or in any wise appertaining to the late Register’s office, to Charles Lynch, Esq. Judge of Probate of said county.
From an inspection of the record, I discover the rule was not made absolute until the spring term of 1823. .Some time after which, a writ of error was sued out, returnable into this court.
The only question now tobe considered is, does the act of the '30th of June, 1822, contravene the constitution of this state, so far as it relates to the rights of the present plaintiff. In the opinion, which will he expressed on this momentous question, I cannot feel insensible either as it regards the “ magnitude of the case,” or the delicacy of our situation. The constitutionality of a legislative act, forms the subject of our enquiries, and on more occasions than one, I have expressed the diffidence and reluctance, and consequently “ the caution and circumspection,” with which I approach such investigations. I have repeatedly said it was unwise and inexpedient to declare laws unconstitutional, where there is any doubt, and when they might be reconciled to the spirit, if not to the letter of the constitution: But, the people of (his state have formed a para *147 mount rule of action for themselves, and they have declared, the powers of the government of this state, shall be divided into three distinct departments, and each of them to he confided to a separate body of magistracy: to wit, those which are legislative to one — those which are executive to another, and those which are judicial to another.
“ No person or collection of persons, being of one of those departments, shall exercise any power, propererly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.” Upon this court then, devolves the high and important duty, of rescuing from legislative violation, those contracts, which have their origin in the constitution, and are placed beyond the reach of legislative control and interference.
Before I go into the consideration of the case now before us, it may not be amiss to review the case of the State vs. Dillihunty, and state the principles upon which that resolution was formed. I wish it to be distinctly understood, 1 am not desirous of overturning the settled opinions of this court, for nothing I conceive, would be more dangerous and pernicious in its consequences, than for this court to open their solemn determinations, with that kind of facility, calculated to encourage litigation. Even if some of them be incorrect, it is better they should remain fixed and immutable, than we should declare to the community, what may be the law of the land to day, may be changed to-morrow. In the fall' of 1821 the legislature passed an act of assembly creating the probate court — Judge .Prosser who was appointed to fill the office in Wilkinson county, proceeded under the 11th section of the 5th article of the constitution, to appoint Cato West as his clerk — and when he demanded the papers pertaining to this newly organized court, Dillihunty, the clerk of the old county court, refused to give them up.. A rule ni si was applied for, directed to Mi. Dillihunty, to shew cause on a certain day, why a peremptory mandamus should not issue — but, the judge doubting as to the law and the rule of decision, referred the case to the supreme court at Columbia. The case was then argued in the absence of authorities, and the court, after consultation, made the rule absolute, — upon the ground, that the legislature had a j-ight to establish such a court under the 7th section of the 5th article of the constitution, — and as Mr. Dillihunty was not known to the law as a *148 clerk of the probate court, but recognized only as a clerk of the old 'county court established under the law of 1807, discharging for the term the duties of clerk of the county, court under its enlarged and extended jurisdiction when it had the power of granting letters of administration and ofreeeiving the probate of wills. It was then said — if the legislature, in the exercise of its legitimate powers, thought proper to erect a new court, for the purposes specified in the act, — Mr. Dillihunty ought not to complain, as he was not deprived of his office, by the act restraining and limiting the jurisdiction of the court of which he was a clerk.
This case is a very different one. Upon the creation of the court, judge Lynch appointed the present plaintiff in error, as his clerk ; and he was regularly inducted into office, under all the requirements of the act of 1821. When the Legislature met at Columbia, in the summer of 1823, they passed a law abolishing the clerk’s office attache d to the court of Probate, and directed that the Judge of said court should hereafter enjoy all the rights, privileges and emoluments — and discharge alL the duties which were of right appertaining to, and required of the clerk, Harman M. Runnells.— Was it competent for the Legislative power to do this ? The 11th Sect, of the 5th article of the Constitution says: — “Each court shall appoint its own clerk, who shall hold his office during good behaviour, but shall be re-moveable therefrom for neglect of duty, or misdemeanor in office, by the supreme court, which court shall determine both the law and fact.” So soon as Harman M. Runnels was appointed the clerk of the court of Probate, under the mandatory authority of the constitution, he became entitled to its protection under the provision I have already mentioned, and he could not legally be ousted therefrom in any other mode than that pointed out by the constitution. If the Legislature in the exercise of an unlimited discretionary power, can overleap the barriers of the constitution, and put at defiance the fundamental principles of the government; then, our boasted freedom and independence is all a mere delusion — and instead of looking up to the fabric of our political institutions with reverence, as the means of establishing an immense empire, in which the freedom and rights of man shall be understood and maintained — the government of the law only acknowledged, and the eternal principles of justice secured to all, we shall, in the language of a distinguished statesman, “be called *149 upon to curse our revolution as a great fountain of discord, violence and injustice.”
The judgment of the court below must be reversed, and the ruleta shew cause dismissed.