OPINION OF THE COURT
Per Curiam.
The Commission on Judicial Conduct has found the petitioner, a Justice of the Supreme Court in Manhattan, guilty of misconduct for failing to render decisions promptly in eight cases pending before him. The. Commission also determined *295 that a censure is the appropriate sanction. Petitioner has requested. review pursuant to the State Constitution which confers on this court plenary power to review the law and the facts as well as the sanction (NY Const, art VI, §22 [d]; Judiciary Law §44 [9]; see also, Matter of Quinn v State Commn. on Judicial Conduct, 54 NY2d 386, 391). Petitioner concedes that the delays were inexcusable but claims that under all the circumstances they do not constitute misconduct warranting disciplinary sanctions. On review of the record we have concluded that it discloses serious administrative failings in petitioner’s handling of the cases in issue, but no persistent or deliberate neglect of his judicial duties rising to the level of misconduct.
Petitioner has been a Judge for more than 25 years. He was first elected in 1963 as a Civil Court Judge in the City of New York. He was elected to the Manhattan Supreme Court in 1968 and was reelected in 1982. His current term is due to expire in 1996 but he will reach State constitutional retirement age of 70 in December of 1992.
In 1988 the Commission on Judicial conduct filed a complaint against petitioner containing a single charge alleging that he "delayed unduly and inexcusably in deciding motions and otherwise disposing of pending matters” in nine particular cases. The complaint alleges that he thereby violated the Rules of Judicial Conduct, particularly the rule requiring a Judge to promptly dispose of pending matters (Rules of Judicial Conduct [22 NYCRR] § 100.03 [a] [5]). Petitioner conceded that thé delays occurred and stipulated to the facts in the cases at issue. After a hearing at which the petitioner testified the Referee sustained the charge with respect to all but one of the cases which he concluded was not unduly delayed.
The Commission confirmed the Referee’s report and determined that the petitioner should be censured. It stated that petitioner’s "repeated failure to dispose promptly of the business of his court, prompting Article 78 proceedings to compel decisions in four cases, constitutes misconduct and is cause for public discipline.” Two members of the Commission dissented with respect to the sanction and voted that the petitioner be admonished.
Throughout his judicial career, petitioner has disposed of approximately 25,000 cases. He often worked evenings, weekends and holidays and volunteered for difficult cases. There is no suggestion that he was not devoting his full time and *296 energies to his judicial activities. At the hearing petitioner testified that he was always optimistic that he could accomplish anything set before him. The record shows that he was overly optimistic with respect to his management abilities, as he also acknowledged during the hearing. Between 1979 and 1987 several cases remained neglected on his docket.
The delays range between seven months for a decision on a motion to restore a complaint in a tort action against a utility, to over nine years on several discovery motions in an admiralty case. Decisions on motions in two other admiralty cases were delayed for nearly four years in one case, and over seven years in the other. In one complicated real estate dispute the parties had to wait nearly eight years for a decision on the merits after a nonjury trial in 1979. The parties in four cases commenced article 78 proceedings to compel petitioner to render a decision. In all but one of those cases, which was settled, the petitioner decided the matter soon after the motion was made. Several times the Appellate Division noted that these delays were unreasonable, and court administrators spoke to the petitioner about them. In 1987 petitioner’s case load was reduced so that he could dispose of those matters which were still overdue, and he complied.
At the hearing petitioner was cooperative and contrite and sought to explain the delays. He candidly admitted that the three admiralty cases "got away” from him. These were complicated suits involving multiple parties who had made motions and cross motions, most of which related to discovery. Petitioner mistakenly believed that all outstanding motions had been resolved. When the oversight was brought to his attention he decided all of these motions in late 1986 and early 1987. But he also conceded that in other cases at issue here, he was aware that the parties were awaiting a decision and he kept putting them off, despite repeated inquiries from counsel. He stated that these cases were extremely complex and required him to set aside a large "block of time” to review a voluminous record and research complicated questions of law, which he was unable to do because of the daily pressure of an ever increasing case load.
This may explain the delays; but as petitioner himself acknowledged at the hearing, it does not justify them. The question is whether these administrative failings constitute judicial misconduct.
The canons of judicial ethics require a Judge to "dispose *297 promptly of the business of the court” (22 NYCRR 100.3 [a] [5]). Generally any violation of the judicial canons, such as those dealing with honesty and integrity, call for disciplinary measures (Matter of Boulanger, 61 NY2d 89), without consideration of whether the Judges conduct in many, most or all other matters may be above reproach (Matter of Sardino v State Commn. on Judicial Conduct, 58 NY2d 286). However a Judge’s failure to promptly dispose of pending matters generally does not warrant "judicial discipline but rather administrative correction” (Matter of Alvino, 100 NJ 92, 98, 494 A2d 1014, 1016; see also, Overton, Grounds for Judicial Discipline in the Context of Judicial Disciplinary Commissions, 54 Chicago-Kent L Rev 59, 65). As the Supreme Court of New Jersey observed in the Alvino case (at 96-97, at 1016): "Not every failure of a judge to conform to the standards of the Code amounts to judicial misconduct or merits formal discipline. While Judges are held to the very highest standards of performance in this state, they are not infallible. It was never intended that each and every failure to conform to the standards of the Code would lead to judicial discipline. Some shortcomings were undoubtedly contemplated as inevitable, and assuming good motives, they were not thought to provide cause for either criticism or discipline.”
The Commission concedes that it does not have jurisdiction over all delays. It recognizes that ordinarily delays do not constitute misconduct and that if the Commission were to exercise general oversight of court calendars it would be exceeding its authority and would interfere with, if not displace, the role of the independent judicial officers and those specifically charged with managing the court system. It urges, however, that at some point a Judge’s failure to dispose of pending matters must be viewed as misconduct within its jurisdiction.
Because most of the delays in this case are so lengthy and inexcusable it is tempting to accept the Commission’s argument without reflection, ignoring the fact that the rule it proposes has no defined or definable limits and would overlap the jurisdiction clearly granted to those administering the courts. Basically it would permit the Commission to intervene in the administrative process whenever it believes that a Judge has failed to dispose of pending matters within unspecified time limits in an unspecified number of cases and on a case-by-case basis.
*298 In our view a clearer line must be drawn between the role of the Commission and court administrators in order to avoid confusion and provide adequate notice to members of the judiciary as to when and under what circumstances delays in disposing of pending matters ceases to be a purely administrative concern and becomes a matter warranting punitive sanctions. We have concluded that generally these matters can and should be resolved in the administrative setting and that the more severe sanctions available to the Commission should only be deemed appropriate and necessary when the Judge has defied administrative directives or has attempted to subvert the system by, for instance, falsifying, concealing or persistently refusing to file records indicating delays. This is consistent with existing precedents in this State (see, e.g., Matter of Leff, Aug. 20, 1982, reported in Ann Report of State Commn on Judicial Conduct, Mar. 1983, at 119; Matter of Lenney, 71 NY2d 456; Matter of Reeves, 63 NY2d 105; see also, NY Const, art VI, § 22 [a] ["persistent failure to perform his duties”]) and should provide a more useful and workable precedent, particularly in light of the current regulations permitting court administrators to closely monitor a Judge’s case load.
Litigants should not be put to the added expense of having to appeal erroneous decisions hastily made when the court could have prevented the error if it had devoted additional time to reviewing the case and researching the applicable law. On the other hand, litigants should not be expected to wait years for a decision because a Judge wants to produce a scholarly writing; neither should they be required to commence collateral proceedings to compel the Judge to render a decision. The law is a learned profession but it is also a practical one. A Judge’s personal interest in promoting or preserving a reputation as a scholar cannot be given priority over the needs of the parties, and the legal system, for prompt resolution of pending disputes. These are circumstances which require administrative attention and action. And if the Judge fails to comply with administrative orders, his conduct must necessarily be deemed an appropriate subject for disciplinary action.
There is also much that administrators can do in future cases to eliminate the types of delay which occurred here. Regulations are now being enforced uniformly and strictly which provide for reporting of matters not resolved within *299 fixed time limits and require every Judge to furnish reasons for all delays (Rules of Chief Judge, 22 NYCRR 4.1; Rules of Chief Administrator part 115). This permits and requires court administrators to assess the reasons for the delay and take appropriate action. The primary responsibility, of course, remains on the individual Judge to manage case inventories so that pending matters are promptly decided. But under the present system, court administrators should be able to complement that responsibility by bringing to all Judges’ attention matters which might otherwise have been overlooked. Similarly, in complex cases, where it is claimed that additional time is necessary to properly resolve the matter, administrators should be able to adjust the Judge’s case load to provide the amount of time needed.
The problem unique to this case is that these reporting rules were in their infancy when most of the delays occurred. At that time, as the dissent notes, there were similar Appellate Division rules, but as the petitioner’s Administrative Judge observed at the hearing, those predecessor rules were not consistently applied and enforced. It was not until recently, when the rules were adopted State-wide and routinely enforced by the Office of Court Administration, that administrators received sufficient information to be made aware of such delays before they became substantial in number or duration. When the responsible officials finally learned of the full extent of the petitioner’s problems in this case, firm administrative action was interposed. His case load was reduced and he immediately turned to and completed those matters which were long overdue. In the context of his overall performance these were isolated incidents. It cannot be said that he was not devoting sufficient time to his over-all duties or was indifferent to them generally. On the contrary it appears that he assumed that he was always able to do more than his share and could not bring himself to ask for help or write a decision which did not meet the high standards which he had set for himself although that caused delay which burdened others. These are failings but, without more, not the kind of derelictions commonly associated with misconduct warranting formal penalties.
Accordingly the determined sanction should be rejected, without costs, and the charge dismissed.